# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

* * * * * * * * * * * * * * * * * * * *
JANARDHANA DONGA,  \*
\*
      Petitioner,  \*   No. 18-886V
\*   Special Master Christian J. Moran
\*
v. \*
\*
SECRETARY OF HEALTH \*   Filed: July 21, 2021
AND HUMAN SERVICES, \*
\*   Fact Ruling Onset of Shoulder Pain
      Respondent. \*
* * * * * * * * * * * * * * * * * * * *

### FINDING OF FACT[1]

Mr. Donga claims that a flu vaccination harmed his shoulder. However, the parties dispute when he began to experience shoulder pain. Preponderant evidence shows that it started within 48 hours of the vaccination.

### Standards for Adjudication

Petitioners are required to establish their cases by a preponderance of the evidence. 42 U.S.C. § 300aa–13(1)(a). The preponderance of the evidence standard requires a "trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the judge of the fact's existence." Moberly v. Sec'y of Health & Human Servs., 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010) (citations omitted).

---

[1] The E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (Dec. 17, 2002), requires that the Court post this ruling on its website. Anyone will be able to access this ruling via the internet (https://www.uscfc.uscourts.gov/aggregator/sources/7). Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

The process for finding facts in the Vaccine Program begins with analyzing the medical records, which are required to be filed with the petition. 42 U.S.C. § 300aa–11(c)(2). Medical records that are created contemporaneously with the events they describe are presumed to be accurate. Cucuras v. Sec'y of Health & Human Servs., 993 F.2d 1525, 1528 (Fed. Cir. 1993).

The Vaccine Act authorizes a special master to find that "the first symptom… of an injury… described in a petition occurred within the time period described in the Vaccine Injury Table even though the occurrence of such symptom… was not recorded or was incorrectly recorded as having occurred outside such period."[2]

## Analysis

Mr. Donga received a flu vaccination in his left deltoid on October 22, 2016. Exhibit 1 at 35. The parties do not dispute the date of vaccination.

Although Mr. Donga avers he felt pain in his shoulder within two days of the vaccination, he did not seek medical attention for more than six weeks. Exhibit 2 (petitioner's affidavit, signed June 21, 2018) ¶ 5. During this time, Mr. Donga took over-the-counter pain medications. Id.

After Mr. Donga's pain did not abate, he emailed his primary care physician (Dr. Ho), stating "Hand Pain since taking Flu shot." Exhibit 1 at 40 (December 13, 2016). This communication led to an in-person visit on December 15, 2016. Dr. Ho recorded "new left shoulder/arm pain" that started after receiving a flu shot in the same arm. Exhibit 1 at 58-59.

Other records, created during medical treatment and outside of litigation, associate Mr. Donga's shoulder and hand pain with his flu shot in October. E.g. exhibit 1 at 107 (January 2, 2017), 112 (January 3, 2017), 138-39 (report to physical therapist on January 5, 2017), 164 (orthopedic surgeon on January 18,

---

[2] The Secretary did not cite section 13(b)(2). Instead, the Secretary relied upon 42 U.S.C. § 300aa–13(a), stating a special master "may not make such a finding based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." See Resp't's Resp., filed March 5, 2021, at 7. The Secretary's reliance on section 13(a) is misplaced in that the medical records, as explained in the text, substantiate Mr. Donga's allegations.

2017). The consistency of accounts reinforces the accuracy of the information contained within the medical records.[3]

The consistency of the histories within the medical records also distinguishes this case from other situations. In other cases, the set of medical records may contain inconsistencies within the histories, presenting a challenge in determining which record is accurate. And, in other cases, the lack of a mention of a shoulder problem in an intervening medical appointment may be ground for an inference that the petitioner was not experiencing shoulder pain until much later. But, neither of these conditions is present here.

For the same reason, a hearing is not necessary to decide when shoulder pain began. See Vaccine Rule 8(d). Oral testimony would be extremely unlikely to change the balance of the evidence as to when Mr. Donga's shoulder pain began. Mr. Donga is advancing the accuracy of medical records. The Secretary's only argument seems to be that the medical records cannot be accurate because Mr. Donga waited so long before seeking treatment. Under the facts and circumstances of this case, the argument about delay is not persuasive due, in part, to the length of delay. Six weeks is not an excessively long amount of time to seek medical attention for mild shoulder pain not associated with a trauma. See Cooper v. Sec'y of Health & Human Servs., No. 16-1387V, 2018 WL 1835179, at *6 (Fed. Cl. Spec. Mstr. Jan. 18, 2018) ("the undersigned does not find a delay in treatment of several months to be dispositive in and of itself regarding the question of onset in a SIRVA case such as this").

Accordingly, for these reasons, the undersigned finds Mr. Donga's shoulder pain started within 48 hours of vaccination. However, this finding does not resolve all issues. To meet the regulatory definition of SIRVA, Mr. Donga must also show that the "Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered." 42 C.F.R. § 100.3(c)(10)(iii).

Some of Mr. Donga's records, including his first post-vaccination medical record to Dr. Ho, say that Mr. Donga said he was having hand pain. E.g. exhibit 1 at 39, 40, 107. Mr. Donga avers that these reports reflect an error because he, as a native speaker of Telugu, did not accurately differentiate the terms "shoulder," "arm," and "hand" when communicating his problems in English. Exhibit 8

---

[3] Although the Secretary appropriately summarizes these medical records in the facts section of his brief, the Secretary does not address them in the analysis section. In other words, the Secretary has not presented any argument against crediting these records.

(petitioner's affidavit, signed Feb. 8, 2020); <u>accord</u> exhibit 9 (affidavit of petitioner's daughter, signed Feb. 10, 2020).

As to whether Mr. Donga was also experiencing hand pain, oral testimony may be useful. Witnesses might include Mr. Donga and his daughter. It also seems likely that medical personnel could explain whether they found any signs of dysfunction in Mr. Donga's hand and whether they prescribed any therapy or home exercises for his hand.

## **Conclusion**

Preponderant evidence shows that Mr. Donga's shoulder pain began within 48 hours of his October 22, 2016 flu vaccination. Whether he also experienced hand pain is not determined in this ruling. A status conference to discuss potential next steps is scheduled for **Wednesday, August 4, 2021, at 3:00 P.M. (Eastern Time)**.

**IT IS SO ORDERED**.

s/Christian J. Moran<br>
Christian J. Moran<br>
Special Master